

IN THE UNITED STATES DISTRICT COURT
OR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAY - 9 2005

**CLERK, U.S. DISTRICT COURT**
By _____
        Deputy

| | | |
|---|---|---|
| MAULCIA CROWLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 3:03-CV-3061-P |
| | § | |
| PRG-SCHULTZ USA, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court are Defendant's Motion for Summary Judgment, filed March 1, 2005,[1] and Defendant's Objections and Motion to Strike Plaintiff's Summary Judgment Evidence ("Defendant's Motion to Strike"), filed April 18, 2005.[2] After a thorough review of the pleadings, the briefing, the summary judgment evidence, and the applicable law, the Court GRANTS Defendant's Motion for Summary Judgment and DENIES as MOOT Defendant's Motion to Strike.

### I.    Background

Plaintiff Maulcia Crowley ("Plaintiff") is an African-American female who was born on December 3, 1962. (Pl.'s App. at 5.) Plaintiff began working for Defendant PRG-Schultz USA, Inc. ("PRG" or "Defendant") as a part-time clerk in 1992, and she was quickly promoted to an auditor position. *Id.* at 12-13, 63A. Plaintiff's employment with PRG continued until October 2002. (*See* Def.'s App at 183.)

---

[1] Plaintiff filed a Response on April 2, 2005, and Defendant filed a Reply on April 18, 2005.

[2] Plaintiff filed a Response on April 20, 2005, and Defendant did not file a Reply.

Over the years of her employment, Plaintiff experienced some difficulties with her co-workers and supervisors. In 1996, Plaintiff heard a Caucasian co-worker named Rick use racial slurs while telling a joke. (Pl.'s App. at 17.) Plaintiff reported the matter to one of her supervisors, David Cook, and Rick was reprimanded. *Id.*

Then in 1998, Plaintiff had difficulties with another Caucasian co-worker, Sandra Chapp ("Chapp"). (Pl.'s App. at 15.) Plaintiff alleges that, among other things, Chapp misplaced her files, threw away her personal items, and "stole" some of the audit claims on which Plaintiff was owed a commission. *Id.* at 15, 18. Plaintiff was allegedly "informed" that Chapp did not want to share an office "with a person of [Plaintiff's] color." *Id.* at 16. After Plaintiff complained about Chapp's conduct and alleged statements and requested a transfer, Plaintiff eventually received a transfer. *Id.* at 15-16. Ultimately, PRG discovered that Chapp had altered some records relevant to Plaintiff's commissions, and PRG paid Plaintiff $20,000. *Id.* at 18.

In 1999, Plaintiff began work as an audit specialist on PRG's Army Air Force Exchange Service ("AAFES") account. (Pl.'s App. at 22-23.) While working on this account, Plaintiff developed the belief that her supervisor, Cress Watson ("Watson"), was engaging in dishonest auditing practices. *Id.* at 23-24. After a few months, Plaintiff reported her belief to supervisors Melissa Wilkinson ("Wilkinson") and David Cook. *Id.* at 24. As a result, Wilkinson called Plaintiff a "troublemaker" and reassigned her to another audit. *See id.* at 24, 51. According to Plaintiff, two or three weeks later, Wilkinson investigated Watson, fired Watson, and apologized to Plaintiff. *Id.* at 24.

In November and December of 2001, Plaintiff asked Susan Vandel ("Vandel"), a human resources representative at PRG, whether any new assignments were available in her area of

**Page -2-**

specialization, grocery audits. (Pl's App. at 25-26, 110.) More specifically, Plaintiff asked

Vandel whether any grocery assignments were available in the Dallas area, near Plaintiff's home.

*Id.* at 110. According to Plaintiff, although such assignments were in fact available, Vandel told

Plaintiff that nothing was available. *Id.*

On February 7, 2002, Plaintiff signed an employment agreement with PRG and an

acknowledgment form attached to PRG's Employee Handbook. (Def.'s App. at 62-63, 120.) The

employment agreement provided that "Employee's employment with PRG can be terminated,

with or without cause, and with or without notice at any time, at either Employee's or PRG's

option." *Id.* at 63. Similarly, the acknowledgment that Plaintiff signed contained the following

language: "I acknowledge that this policy guide is neither a contract of employment nor a legal

document, that my employment is not for a definite period of time, that either party may terminate

the employment relationship, with or without cause, at any time." *Id.* at 120. Furthermore, PRG's

Employee Handbook reads in bold, capital letters, **"THIS POLICY GUIDE IS NOT

INTENDED TO BE A CONTRACT, EXPRESS OR IMPLIED, BETWEEN YOU AND

PRG-SCHULTZ."** *Id.* at 69.

Also in February of 2002, Plaintiff traveled to work on an audit in Scarborough, Maine.

(Pl.'s App. at 33.) Plaintiff brought her baby daughter with her to Maine, *id.* at 110, and one

evening after work, Plaintiff and her daughter went to a grocery store near the hotel where they

were staying. *Id.* at 36-37. The grocery store property was not owned by PRG. *Id.* at 49.

Plaintiff simply went there to purchase diapers and milk for her daughter. *Id.* at 36. When

Plaintiff arrived with her daughter at the store parking lot and began to exit her vehicle, three or

four Caucasian men approached her, yelled at and threatened her, calling her a "black bitch" and a

**Page -3-**

"nigger" and asking what she was doing in "[their] city." *Id.* at 36. Plaintiff quickly left the store

parking lot. *Id.* at 37. PRG did not know the identities or the employers of these men. *Id.* at 49.

The next morning, which was a Friday morning, Plaintiff contacted Vandel and asked

Vandel to send her home because Plaintiff was afraid for her life and the life of her baby daughter.

(Pl.'s App. at 38-39.) Vandel told Plaintiff that she would get in touch with PRG's regional

supervisor, Tom Leetzow ("Leetzow"), but Plaintiff did not hear back from Vandel or Leetzow

that Friday. *Id.* at 39. The following Monday, Plaintiff contacted Leetzow herself to find out

whether she could come home. *Id.* at 39. According to Plaintiff, Vandel and Leetzow

intentionally refrained from taking the appropriate actions to help Plaintiff return home promptly.

*Id.* at 27, 38-38. Approximately one week later, Plaintiff returned home with permission from

Vandel's supervisor and at PRG's expense. *Id.* at 41-42.

After Plaintiff returned to Dallas, she injured herself while playing with her children, and

consequently, she took medical leave beginning March 29, 2002. (Pl.'s App. at 42; Def.'s App. at

121.) Although Plaintiff's physician released her to work on October 8, 2002, Plaintiff's

psychotherapist requested that she receive an additional thirty (30) days of leave. (Def.'s App. at

121.) In a letter dated October 16, 2002, a PRG benefits administrator informed Plaintiff that she

would be granted personal leave and that "such leaves are granted up to 30 days." *Id.* Plaintiff

never received notice that she should return to work or that her personal leave was denied. (Pl.'s

App. at 112.) Nonetheless, on October 25, 2002, when Plaintiff had been absent from work for

over six months, PRG terminated her "based on [her] continued absence from work." (Def.'s

App. at 183.) According to Plaintiff, she was only terminated because Vandel "falsely and

inaccurately informed [Vandel's supervisor] that [Plaintiff had] exhausted her leave and that she

Page -4-

was not given authority to take personal leave." (Pl.'s Br. in Resp. at 11.)  Plaintiff was 39 years

old at the time of her termination. (Pl.'s App. at 52.)

Plaintiff filed a charge with the EEOC on July 10, 2003, alleging that PRG discriminated

against her on the basis of race and age. (Def.'s App. at 185.)  She amended the EEOC charge on

July 23, 2003 to add an allegation of retaliation.  *Id.* at 186.  Then on December 26, 2003, Plaintiff

filed this lawsuit, alleging race discrimination, harassment, and retaliation in violation of Title VII

of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and the Texas Commission on

Human Rights Act ("TCHRA"); age discrimination under the Age Discrimination in Employment

Act ("ADEA") and the TCHRA; harassment under the ADEA; intentional infliction of emotional

distress; and breach of contract.  Defendant now moves for summary judgment on all of Plaintiff's

claims.

## II.    Summary Judgment Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to

interrogatories and admissions on file, together with affidavits, if any, show that there is no

genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party bears

the burden of informing the district court of the basis for its belief that there is an absence of a

genuine issue for trial, and of identifying those portions of the record that demonstrate such an

absence.  *Id.*  However, all evidence and reasonable inferences to be drawn therefrom must be

viewed in the light most favorable to the party opposing the motion.  *United States v. Diebold,*

*Inc.*, 369 U.S. 654, 655 (1962).

Once the moving party has made an initial showing, the party opposing the motion must

**Page -5-**

come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party defending against the motion for summary judgment cannot defeat the motion unless he provides specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in her favor. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent a summary judgment. *Id.* at 248-50; *Abbot v. Equity Group, Inc.,* 2 F.3d 613, 619 (5th Cir. 1993). In other words, conclusory statements, speculation and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Finally, when the non-movant fails to provide a response identifying the disputed issues of fact, the Court is entitled to accept the movant's description of the undisputed facts as prima facie evidence of its entitlement to judgment. *Eversly v. MBank Dallas*, 843 F.2d 172, 173-174 (5th Cir. 1988). The Court has no duty to search the record for triable issues. *Ragas v. Tenn. Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998).

III.    **Defendant's Motion for Summary Judgment**

A.    **Race Discrimination**

Title VII makes it an unlawful employment practice for an employer to adversely affect the status of an employee because of the individual's race. 42 U.S.C. § 2000e-2(a)(1) (2005). To establish a prima facie case of discrimination, a plaintiff may prove her claim through direct evidence, statistical proof, or the tripartite burden-shifting test established by the Supreme Court

in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).[3]  "'Direct evidence of

discrimination is evidence which, if believed, would prove the existence of a fact (*i.e.*, unlawful

discrimination) *without any inferences or presumptions*.'"  *Nichols v. Loral Vought Sys. Corp.*, 81

F.3d 38, 40 (5th Cir. 1996) (emphasis original) (citations omitted).  Race discrimination cases

based on circumstantial evidence are subject to the *McDonnell Douglas* burden-shifting test.

*Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004).

Although Plaintiff claims to provide the Court with direct evidence of race discrimination,

the only evidence she identifies as such is "the use of racial slurs and code words."  (Pl.'s Br. in

Resp. at 13.)  The Court assumes that Plaintiff is referring to the comments made by Chapp, the

comments made by the men in Maine, and Wilkinson's reference to Plaintiff as a "troublemaker."[4]

However, this evidence does not constitute direct evidence of discrimination by PRG; instead,

these "racial slurs and code words" are properly characterized as circumstantial evidence because

inferences would have to be made in order to connect them to unlawful discrimination by PRG.

Therefore, the Court evaluates Plaintiff's race discrimination claim under the *McDonnell Douglas*

test.

Under the *McDonnell Douglas* test, a plaintiff must first establish a prima facie case of

race discrimination by proving that: (1) she is a member of a protected class; (2) she was qualified

for her position; (3) she suffered an adverse employment action; and, (4) either she was replaced

---

[3] Although Plaintiff bases her race discrimination, race-based hostile work environment, and retaliation claims on Title VII, 42 U.S.C. § 1981, and the TCHRA, the Court refers only to the substantive standards of Title VII with regard these claims because the law governing parallel claims made under these different statutes is identical.  *Shackelford*, 190 F.3d at 404 n.2.

[4] Plaintiff also asserts that Watson subjected Plaintiff to racial slurs (Pl.'s Br. in Resp. at 6), but Plaintiff has not provided the Court with any evidence of any racial slurs by Watson.  Therefore, the Court does not consider these assertions regarding Watson.

by someone outside of the protected class or others similarly situated, but outside of the protected

class, were treated more favorably. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d

507, 512-13 (5th Cir. 2001); *see also Martin v. Kroger Co.*, 65 F. Supp.2d 516, 543 (S.D. Tex.

1999) (citing *Nieto v. L&H Packing Co.*, 108 F.3d 621, 623 (5th Cir. 1997)).

 Plaintiff's ability to establish the first three elements of a prima facie case of race

discrimination is undisputed.  Plaintiff, an African-American, was qualified for the auditor

position at PRG and she suffered an adverse employment action, termination.  (Pl.'s Br. in Resp.

at 14.)  In an effort to establish the fourth element of a prima facie case, Plaintiff contends that

similarly situated persons outside of the protected class were treated more favorably.  *Id.* at 14-15.

In order to show that such similarly situated persons were treated more favorably, Plaintiff must

demonstrate that the conduct for which Defendant alleges she was terminated was nearly identical

to the conduct of an employee outside of the protected class whom the company retained.  *See*

*Perez v. Texas Dept. of Criminal Justice, Institutional Div.*, 395 F.3d 206, 213 (5th Cir. 2004)

(holding that in order for a plaintiff to show that a co-worker was similarly situated, that plaintiff

must show that the co-worker engaged in the same conduct for which the plaintiff was

terminated); *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1179 (5th Cir. 1990) (same).

 Defendant maintains that Plaintiff was terminated because of her continued absence from

work.  (Def.'s Br. in Supp. of Summ. J. at 11; Def.'s App. at 183.)  Plaintiff was, in fact, absent

from work for a continuous period of over six months.  (*See* Def.'s App. at 183.)  Nevertheless,

Plaintiff has failed to present any evidence or even argue that PRG retained other employees who

were absent from work for a similar amount of time.  Plaintiff does argue that similarly situated

white auditors received better audit assignments than she did (Pl.'s Br. in Resp. at 14-15), but this

**Page -8-**

argument is not relevant to whether Plaintiff's *termination* was based on her race. Therefore, Plaintiff has not established a prima facie case of race discrimination, and it is unnecessary for the Court to reach the second or third part of the *McDonnell Douglas* burden-shifting test. Plaintiff's claim of race discrimination is dismissed as a matter of law.

### B.  Hostile Work Environment

In order to establish a prima facie case of a hostile work environment claim, a plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to harassment; (3) the harassment was based on the protected trait; (4) the harassment affected a term or condition of her employment; and (5) the employer knew or should have known about the harassment and failed to take prompt remedial action. *Felton v. Polles*, 315 F.3d 470, 484 (5th Cir. 2002); *see also Long v. Eastfield Coll.*, 88 F.3d 300, 309 (5th Cir. 1996).

Whether an environment is hostile or abusive depends on the totality of the circumstances, with a focus on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22-23 (1993); *see Long*, 88 F.3d at 309. To survive summary judgment on a hostile work environment claim, a plaintiff must produce enough evidence that a reasonable jury could find that the alleged harassment was not merely sporadic but that the workplace was "permeated with discriminatory intimidation, ridicule and insult . . . sufficiently severe or pervasive to alter the conditions of [a plaintiff's] employment and create an abusive working environment." *Harris*, 510 U.S. at 21; *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 594 (5th Cir. 1995). Conduct that is not severe or pervasive enough to create an objectively

**Page -9-**

hostile work environment is beyond Title VII's purview. *See DeAngelis*, 51 F.3d at 594.

As stated above, Plaintiff is African-American and is therefore a member of a protected class. Additionally, Plaintiff alleges that she suffered harassment based on her race on several occasions and that although PRG knew of these incidents, PRG failed to take prompt remedial action. (Pl.'s Br. in Resp. at 17, 19.) Plaintiff further asserts that this harassment affected a term or condition of her employment by damaging her psychological well-being. *Id.* at 17-18. In support of her harassment claim, Plaintiff specifically cites the following incidents:[5]

(1)   In 1998, Plaintiff was told that Chapp did not want to work with someone of Plaintiff's color and background. (Pl.'s App. at 16.)

(2)   Also in 1998, Chapp stole Plaintiff's commissions and personal items. *Id.* at 15, 18.

(3)   In 2000, Wilkinson's referred to Plaintiff as a "troublemaker." *Id.* at 51.

(4)   Also in 2000, Plaintiff was assigned to an undesirable account. (Pl.'s Br. in Resp. at 19; Pl.'s App. at 24.)

(5)   In 2001, Vandel misrepresented to Plaintiff that the account assignments Plaintiff desired were unavailable. (Pl.'s App. at 110.)

(6)   In 2002, after Plaintiff was accosted in a grocery store parking lot in Maine, Vandel and Leetzow purposefully neglected to take action to help her return home to Dallas. *Id.* at 33, 36-37.

(7)   Also in 2002, PRG failed to give Plaintiff notice that her personal leave was denied. *Id.* at 112.

(Pl.'s Br. in Resp. at 18-19.)

With the exceptions of the incidents involving Chapp, Plaintiff has offered no evidence,

---

[5] PRG argues that several of Plaintiff's allegations of racial harassment are barred by limitations, and should not be considered by the Court. Although the Court is not convinced that Plaintiff has adequately pled a continuing violation theory of racial harassment, the Court finds that it is not necessary to reach the issue. Even disregarding limitations, for the reasons set forth in this section, PRG is still entitled to summary judgment on this claim.

besides her own unsubstantiated assertions, that any of the harassment she suffered was based on her race. Even assuming *arguendo* that Plaintiff has established a prima facie case of a hostile work environment, however, PRG would still be entitled to summary judgment. Plaintiff has not presented any competent summary judgment evidence to show that the alleged harassment she endured was of the frequency or severity necessary to trigger Title VII liability. While she may have experienced several offensive comments or actions at PRG, the Fifth Circuit's jurisprudence in this area requires that the harassment be "severe or pervasive enough to create an objectively hostile or abusive work environment." *DeAngelis*, 51 F.3d at 594. Even if the Court were to accept all of Plaintiff's allegations as true, Plaintiff has cited (at best) seven offensive statements or actions over a four year period of time. These allegations simply do not rise to the level of "severe and pervasive" harassment required for a hostile work environment claim. Accordingly, as Plaintiff has failed to state a hostile work environment claim, Defendant's Motion for Summary Judgment is GRANTED with respect to this claim.

**C.    Retaliation**

Title VII requires an aggrieved person to file a charge within 300 days of the discriminatory conduct. 42 U.S.C. § 2000e-5(e)(1). Under the TCHRA, a complaint of unlawful employment practices must be filed within 180 days after the alleged unlawful employment practices occurred. Tex. Lab. Code Ann. § 21.202 (Vernon 1998). Crowley filed her charge on July 10, 2003, and amended it on July 23, 2003 to add a retaliation theory. (Def.'s App. at 185-86.) Assuming without deciding that Plaintiff's retaliation action relates back to her July 10, 2003 charge, Defendant correctly contends that any events occurring more that 300 days prior to July 10, 2003 are time-barred under Title VII and the TCHRA. (Def.'s Br. in Supp. of Summ. J. at

**Page -11-**

19.) Plaintiff does not dispute this contention. Counting back 300 days from July 10, 2003, Defendants arrive at September 10, 2002. *See id.* Consequently, the Court does not consider any acts prior to September 10, 2002 in reviewing Plaintiff's retaliation claims under Title VII and the TCHRA.[6]

In addition to claiming retaliation under Title VII and the TCHRA, however, Plaintiff also claims retaliation in violation of Section 1981. (Pl.'s Br. in Resp. at 20.) Under the heading "PLAINTIFFS' [sic] SECOND CAUSE OF ACTION Violation of 42 U.S.C. § 1981" in Plaintiff's Complaint, she asserts that "Defendant retaliated against . . .Plaintiff." (Compl. at 5.) The applicable statute of limitations for federal civil rights actions brought under Section 1981 is four years. *See generally Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369 (2004). Therefore, because Plaintiff filed her Complaint on December 26, 2003, the Court will not consider any acts prior to December 26, 1999 in reviewing Plaintiff's retaliation claim under Section 1981.

To sustain her retaliation claims, Plaintiff alleges that because Wilkinson did not take Plaintiff's complaints about Watson seriously, Wilkinson labeled Plaintiff as a "troublemaker" and reassigned her to a less desirable account in 2000. (Pl.'s Br. in Resp. at 20-21.) Plaintiff also alleges that because she reported Vandel's alleged racial prejudice to higher level managers, Vandel retaliated against her by feeding her misinformation about available assignments in 2001, by leaving her in a "racially charged and dangerous environment without assistance" in March 2002, and by lying about the status of Plaintiff's leave in October 2002, ultimately causing Plaintiff's termination. (Pl.'s Br. in Resp. at 21.)

---

[6] Because the filing requirement under the TCHRA is 180 days, the Court should decline to consider any events occurring more than 180 days before July 10, 2003 in reviewing Plaintiff's retaliation claim under the TCHRA. However, in this case, making this distinction is not critical because all of the events occurring with the 300 days prior to the filing of Plaintiff's charge also occurred within 180 days prior to the filing of Plaintiff's charge.

**Page -12-**

The only conduct related to retaliation Plaintiff alleges to have occurred after September 10, 2002 is the conduct of Vandel in October 2002. Hence, this is the only conduct the Court considers relevant to Plaintiff's retaliation claims under Title VII and the TCHRA.

For the purposes of Plaintiff's Section 1981 retaliation claim, the Court considers Wilkinson's calling Plaintiff a "troublemaker" and reassigning Plaintiff to an undesirable account in 2000. The Court also considers Vandel's alleged conduct in 2001 and March 2002 in addition to Vandel's October 2002 conduct. All other conduct which Plaintiff relates to retaliation occurred prior to December 26, 1999, and therefore, such conduct is not considered by the Court.[7]

The *McDonnell Douglas* burden-shifting test applies to retaliation claims made under Title VII, TCHRA, and Section 1981.[8] To establish a prima facie case of retaliation, Plaintiff must first demonstrate that: (1) she engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003). A plaintiff engages in protected activity only when she opposes a practice made unlawful by Title VII or participates in the procedures established by Title VII to enforce its provisions. *See* 42 U.S.C. § 2000e-3(a).

Plaintiff is unable to state a prima facie case of retaliation because she cannot show that she engaged in protected activity in connection with the adverse employment actions of which she complains. Plaintiff identifies the adverse employment actions taken against her as the transfer in 2000 and the termination in 2002. (Pl.'s Br. in Resp. at 21.) With regard to Wilkinson's actions,

---

[7] Plaintiff overheard Rick make a racial slur and reported it to her supervisor in 1996. (Pl.'s App. at 17.)

[8] *See supra* n.4.

**Page -13-**

Plaintiff has not presented the Court with any evidence that these actions were connected to any action Plaintiff took to oppose discrimination. Instead, Plaintiff alleges that Wilkinson took these actions in response to Plaintiff's report of dishonest auditing practices. (Pl.'s App. at 24.) Defendant points out that "[o]pposing someone for dishonesty [] is not a protected activity" (Def.'s Reply at 8), and the Court agrees. Consequently, Plaintiff's allegations regarding Wilkinson cannot support a claim of retaliation.

Plaintiff has also failed to provide evidence that she actually complained about Vandel acting in a discriminatory manner. Although Plaintiff argues in her Response that she did complain of such conduct (Pl.'s Br. in Resp. at 21.), Plaintiff does not indicate anywhere in either her deposition or her affidavit that she made such complaints. In Plaintiff's deposition, Plaintiff only complains of Vandel as being incompetent, not racially prejudiced. (Pl.'s App. at 26-27, 45.) Also in her deposition, Plaintiff indicates that Vandel retaliated against her for "repeatedly [going] over her head," not for engaging in any protected activity. (Def.'s App. at 51-52.) As such, Plaintiff has no evidence that she engaged in protected activity related to the allegedly retaliatory acts of Vandel. She therefore fails to establish a prima facie case of retaliation under Title VII, the TCHRA or Section 1981. Accordingly, the Court does not reach the second or third part of the *McDonnell Douglas* burden shifting test, and Plaintiff's retaliation claims are dismissed as a matter of law.

**D.    Age Discrimination and Age-Based Hostile Work Environment**

Under the ADEA and the TCHRA, Plaintiff asserts that "she suffered age related discrimination and a hostile work environment at the hands of her supervisors and co-workers because of her age." (Compl. at 9.) The Court first addresses Plaintiff's age discrimination claim.

**Page -14-**

To establish a prima facie case of age discrimination under the ADEA or the TCHRA, a plaintiff must show, among other things, that she was a member of the protected class at the time of her termination. *Machinchick v PB Power, Inc.*, 398 F.3d 345, 349-350 (5th Cir. 2005); *Stewart v. Sanmina Texas L.P.*, 156 S.W.3d 198, 209-10 (Tex. App.–Dallas 2005, no pet.). The class protected by the ADEA is limited to individuals age forty (40) and older. 29 U.S.C. § 631(a) (2005). The class protected against age discrimination or harassment under the TCHRA is also limited to individuals age forty (40) and older. Tex. Lab. Code Ann. § 21.101.

Defendant argues that Plaintiff cannot establish a prima facie case of age discrimination because at the time of her termination she was only thirty-nine (39) years of age. (Def.'s Br. in Supp. of Summ. J. at 21.) Overwhelming evidence establishes that Plaintiff was, in fact, 39 years old at the time of her termination. There is no dispute that Plaintiff was born on December 3, 1962, and thus, she was 39 years old in October of 2002. Plaintiff's Complaint alleges that her employment with PRG extended only through October 25, 2002. (Compl. at 2.) In both EEOC charges filed by Plaintiff, she identified the date of her termination as October 24, 2002. (Def.'s App. at 185-86.) In the affidavit submitted with Plaintiff's Response, she states that she was terminated in October of 2002. (Pl.'s App. at 106, 112.) Additionally, the letter PRG sent to Plaintiff informing her of her termination was dated October 24, 2002 and stated that the termination would be effective that very day. (Def.'s App. at 183.) Finally, Plaintiff indicated in her deposition that when she was terminated in October of 2002, she was 39 years old. (Def.'s App. at 42, 52.)

Despite this overwhelming evidence, Plaintiff now contends that there is a fact issue surrounding the effective date of her termination because she received a letter from PRG which

Page -15-

placed her termination date in March 2003. (Pl.'s Br. in Resp. at 22.) However, Plaintiff has not specified any evidence in the record to substantiate this assertion. Although she cites generally to a "Non-Compete Letter," *id.*, she has not indicated where this letter or testimony regarding this letter can be found within the record, and the Court is unable to find this letter within Plaintiff's Appendix in Support of Plaintiff's Response. Although there appears to be some deposition testimony regarding this letter (*See e.g.,* Pl.'s App at 75B), the Court is not persuaded that a reasonable jury could return verdict in favor of the Plaintiff on this issue, given the number of times Plaintiff herself has indicated that her termination took place in October 2002. Therefore, Plaintiff's age discrimination claim is dismissed as a matter of law.

Plaintiff also asserts a claims for hostile work environment based on her age. Assuming for the sake of argument that a plaintiff can even make a claim for age-based hostile work environment under either the ADEA or TCHRA, Plaintiff could not establish such a claim. To establish a hostile work environment claim, a plaintiff must show that she was a member of the protected class. *Celestine v. Petroleos de Venez. SA*, 266 F.3d 343, 353 (5th Cir. 2001); *Nardini v. Continental Airlines, Inc.*, 60 S.W.3d 197, 201 (Tex. App.–Houston [14th Dist.] 2001, pet. denied). For the reasons stated above, it is clear that Plaintiff cannot establish that she is a member of the protected class with respect to an age-based claim. Therefore, Plaintiff's claim for hostile work environment based on her age is dismissed as a matter of law.

### E. Intentional Infliction of Emotional Distress

Under Texas law, the tort of intentional infliction of emotional distress is a "gap-filler." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). In other words, a plaintiff may not recover on an intentional infliction of emotional distress claim unless he or she "has no other

recognized theory of redress." *Hoffman-LaRoche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). The Texas Supreme Court has elaborated on this "gap-filler" doctrine, stating

> [A] plaintiff's failure to establish his or her claim [under a statutory remedy] does not mean that the plaintiff has a claim for intentional infliction of emotional distress. If the gravamen of a plaintiff's complaint is the type of wrong that the statutory remedy was meant to cover, a plaintiff cannot maintain an intentional infliction claim regardless of whether he or she succeeds on, or even makes, a statutory claim.

*Id.* at 448.

Defendant argues that Plaintiff's intentional infliction of emotional distress claim should be dismissed because Plaintiff has employed the same allegations to support her statutory claims and her intentional infliction of emotional distress claim. (Def.'s Br. in Supp. of Summ. J. at 22.) Plaintiff does not address this argument by Defendant, but in support of her intentional infliction of emotional distress claim, she focuses on PRG's failure to promptly address the harassment she encountered in Maine. (Pl.'s Br. in Resp. at 22-23.) As Defendant points out, Plaintiff has also cited these allegations in support of her race-based hostile work environment and retaliaton claims. *Id.* at 19, 21. Although the Court determined that Plaintiff's hostile work environment and retaliation claims cannot succeed based on these allegations, to the extent Plaintiff asserts claims *against PRG* based on the Maine incident, the Court concludes that "the gravamen of [Plaintiff's] complaint is the type of wrong that the statutory remed[ies] w[ere] meant to cover," *but not necessarily protect against.* Consequently, Plaintiff cannot recover on her intentional infliction of emotional distress claim. Accordingly, this Court GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiff's intentional infliction of emotional distress claim.

### F.     Breach of Contract

Finally, Plaintiff complains that Defendant terminated her employment in breach of

**Page -17-**

contract. (Compl. at 8.)  Under Texas law, employment is presumed to be at-will absent an

express agreement to the contrary.  *See Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d

501, 502 (Tex. 1998).  Under the employment-at-will doctrine, employment may be terminated at

any time for any reason.  *Id.*  The parties may agree, however, to modify the at-will nature of the

agreement.  *Goodyear Tire & Rubber Co. v. Portilla*, 879 S.W.2d 47, 51 (Tex. 1994)  The burden

of proving such a modification rests upon the party asserting it.  *Hathaway v. General Mills, Inc.,*

711 S.W.2d 227, 228-29 (Tex. 1986).

Plaintiff initially argues that a contract modifying the at-will nature of her employment is

evidenced by the letter approving Plaintiff's request for leave in accordance with the personal

leave policy outlined in Defendant's employee handbook.  (Compl. at 8.)  Yet Defendant

maintains that "nothing in the letter suggests that PRG intended to waive its rights under the at-

will doctrine." (Def.'s Br. in Supp. of Summ. J. at 26.)  The letter merely approves Plaintiff's

request for personal leave.  (Def.'s App. at 121.)  In her Response, Plaintiff does not dispute this

fact.  Instead, she argues that the employee handbook itself imposed contractual duties on PRG.

(Pl.'s Br. in Resp. at 23.)

However, an adequate disclaimer in an employee handbook negates any implication that

the handbook places a restriction on the employment at-will doctrine.  *Federal Express Corp. v.*

*Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993).  PRG's handbook reads in bold, capital letters,

**"THIS POLICY GUIDE IS NOT INTENDED TO BE A CONTRACT, EXPRESS OR**

**IMPLIED, BETWEEN YOU AND PRG-SCHULTZ."** (Def.'s App. at 69.)  Additionally,

Plaintiff signed an acknowledgment form, indicating that she understood the handbook was

"neither a contract of employment nor a legal document." *Id.* at 120.  As such, Defendant's

**Page -18-**

employee handbook is not evidence of a modification of the at-will nature of Plaintiff's employment; nor is it evidence of any other contract. Therefore, Plaintiff's claim for breach of contract is dismissed with as a matter of law.

## IV.     Defendant's Motion to Strike

Defendant also submits a Motion to Strike, in which Defendant objects to summary judgment evidence submitted by Plaintiff. Defendant specifically contends that portions of Plaintiff's Affidavit should be stricken because several statements contained in the Affidavit are speculative, conjectural, and conclusory. (Def.'s Mot. to Strike at 2-5.) However, even if the Court was to consider Plaintiff's Affidavit in its entirety, the outcome of Defendant's summary judgment motion would not be affected. Therefore, the Court DENIES as MOOT Defendant's Motion to Strike.

## V.     Conclusion

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment and DENIES as MOOT Defendant's Motion to Strike. All of Plaintiff's claims against PRG are DISMISSED with PREJUDICE.

**IT IS SO ORDERED.**

Signed this _9th_ day of ~~April~~ *May* 2005.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE